MASTERSON
*vs.*
HAGAN, &c.

---

## Masterson *vs.* Hagan, &c.

Case 32.

17bm325
104 718

### APPEAL FROM GARRARD CIRCUIT.

ORD. PET.

1. No recovery for *mesne profits* can be had for any term anterior to that date of the demise, without an exhibition of title before that date.

2. Where a party who has recovered a judgment, seeks to defeat a motion for a new trial, made on the ground of excess of damages, and misdirection of the court, by remitting a portion of the damages assessed, such an amount must be remitted as will show to the court that the defendant cannot be prejudiced by refusing the new trial asked for, and that the damages retained are clearly sustained by the proof in the cause, and be a proper basis for the remainder.

3. Since the adoption of the Code of Practice, no suit in the name of John Doe, the fictitious lessee, can be maintained for the recovery of

*mesne profits* after a recovery in ejectment, though the recovery may have been in his name under the former mode of proceeding. The suit must be in the name of the real party entitled to the recovery.

[The facts of the case appear in the opinion of the court.—REP.]

*George Robertson* for appellant—

The demise in the declaration of ejectment was laid in the names of many persons, none of whom, except two, were plaintiffs when this case for mesne profits was tried. We insist that each party alike is concluded by the demise and the judgment in ejectment, and these conclusively showing, in this case, a joint title in all the lessors, and the commencement of the term on April 1, 1850, the two remaining plaintiffs cannot be adjudged to have been owners before April 1, 1850, nor to a greater extent than their ratio of joint interest with all the lessors. Therefore the circuit judge erred : 1. In not restricting the recovery in this case to three years, running from the date of the demise to the commencement of this suit ; and, 2. In overruling the instruction for restricting the recovery of the two plaintiffs to their said ratio. The plaintiffs tried to correct the first error by remitting all except for three years. But did this cure it? Had the investigation been confined to the last three years, the verdict, for aught this court can know, might have been proportionably less than it was. But the second error was not attempted to be cured ; and it is manifest that if the entire ownership was entitled to recover $2,700, two of many part owners were not entitled to as much as even $1,000. And can they be entitled to more than their own interest? Would their recovery bar the other lessors from maintaining their action for mesne profits for the same time?

Besides, were there no other objections, the proof as to the renting, the repairs, and other improvements, show beyond doubt, that for even all the lessors, the

verdict was too high—much higher than the evidence authorized.

*J. Harlan, J. F. Bell* and *G. W. Dunlap* on the same side—

Argued that the judgment should be reversed on the following grounds :

1. The circuit court erred in giving the first instruction asked for by the plaintiff, because it assumes, with the modification attached thereto by the court, that the plaintiff was entitled to recover rents for five years, when the period between the lease and the recovery of the judgment was only about three years. If a plaintiff in an action to recover *mesne profits*, seeks a recovery for rents from a period anterior to the date of the demise laid in the declaration, he must exhibit and show title and a right to enter anterior to that time. No such evidence was adduced on the trial in this case.

2. The right to recover for fees of counsel is not denied, but there must be evidence that the plaintiff paid such fees, or is bound to do so. There is no such evidence in this record, and the instruction was wrong on that point. (*Doe, on demise of Augusta, vs. Perkins, 8 B. Monroe, 198.*)

3. The court erred in refusing to instruct the jury, as moved by defendants : 1. In not instructing the jury that they could not give damages for any period prior to the first of April, 1850, the date of the demise in the declaration. 2. In refusing to tell the jury that they could only give damages to the plaintiffs for the aggregate amount of their interest in the land.

The action to recover *mesne profits* must be in the names of the real parties in interest. The idea of introducing the name of John Doe in an action to recover *mesne profits*, since the adoption of the Code of Practice, is foreign to the letter and spirit of that work. "Section 33. Every action must be prosecuted in the name of the real party in interest, except

as provided in section 60." The exception does not embrace this case.

4. It is not supposed that the remitter of part of the damages cures the errors complained of. Neither the parties nor the court can know upon what basis the jury acted in the assessment of damages. A defective verdict, under the evidence given in the case, cannot be cured by a remitter of part of the damages.

5. No objection was made in the circuit court to the motion for a new trial on the ground that it came too late, and it cannot avail in this court.

*S. Turner* for appellees—

1. The motion for a new trial was not made in proper time. The cause was decided on the third day of the term, and the motion made on the seventh. More than three days had then elapsed, and the judgment should be affirmed. (*Ray vs. Harris,* 15. *Ben. Monroe,* 62.)

2. If any error occurred for which a new trial might have been granted, it was cured by the remitter which was entered of part of the damages.

It appears that one undivided half of the 1,100 acres of land was recovered in the ejectment; that one-half of the whole tract was cleared and in cultivation from 1846 to 1853, inclusive, and that it was worth two dollars per acre; that the soil and improvements had been injured one dollar per acre per annum; that the pasture land was worth $90 per annum, making in the aggregate $1,740 for rents and waste; and that the counsel fees were worth $200. For three years this would make an aggregate of $5,220; half of which is $2,610, to which add fees of counsel in the ejectment suit, $200, and it makes the sum of $2,810—exceeding the judgment after the remitter. Add to this one-sixth of a year, from the 1st April to the 31st May, 1853, $146, and the judgment is for about $180 less than it

should have been, and Masterson has no right to complain.

All the instructions asked by appellant related to the measure of damages; and if the damages, after the remitter, are not too great, and it is insisted they are not, then he has no right to complain. The object of the law is the administration of justice, and no injustice is done to appellant.

Chief Justice MARSHALL delivered the opinion of the court:

July 5.

In an action of ejectment, brought in the name of John Doe, on the joint and several demise of John Barnett, James Hagan, and six others, dated April 1, 1850, and in which Wm. Masterson was made sole defendant, as the landlord of the tenants in possession, a verdict and judgment was rendered in favor of the plaintiff for one undivided moiety of the tract of land in controversy. A writ of *habere facias* was executed on the 29th of May, 1853, by delivering possession of one undivided half of the land therein described, to James Hagan, one of the lessors. And on the 31st of May, 1853, this action for recovery of the mesne profits, &c., was commenced in the name of John Doe, James Hagan, and four others, who had been lessors, against Masterson. In the progress of the cause, the action as to three of the plaintiffs was abated by their death, of which an entry was made on the record; and John Doe and two others were the only remaining plaintiffs.

The petition charges that the defendant entered with force and arms on 1000 acres of land, &c., and drove and kept the plaintiffs out, &c., and received the issues and profits, &c., and greatly injured the land, and claims three thousand dollars as the damage, &c. The answer traverses most of these allegations, and upon evidence that there were about 1100 acres in the tract, of which about one-half was in cultivation, and some other portions in pasture; that the land had been injured by the mode of cultivating it, with estimates of the deterioration, and

also of the annual value of the land, and of the reasonable fees of the attorneys employed in the circuit court and court of appeals, for its recovery by the action of ejectment. A verdict was found for the plaintiffs for $4,118 in damages, for which judgment was rendered. But pending a motion for a new trial, on the ground that the court had erred in giving and refusing instructions, and that the verdict was for a larger sum than was claimed in the petition, and also that it was against the evidence, the plaintiffs remitted all of the judgment except $2,778 66⅔, "being," as the remittitur states, "the excess over three years' rent, and $50, the attorney's fee in the court of appeals." And the motion for a new trial was thereupon overruled.

The court had instructed the jury that the plaintiffs could recover for rents and waste during the occupation of the land by the defendant, for a period not exceeding five years; and also that they had a right to recover the reasonable fees of their counsel in the circuit court and court of appeals; and had refused to instruct as moved by the defendant; that the recovery for rent and waste must be limited to the period between the 1st of April, 1850, and the 31st of May, 1853; and that the plaintiffs were entitled to damages only in proportion to their interest in the land recovered in the action of ejectment.

1. No recovery for *mesne profits* can be had for any term anterior to the date of the demise, without an exhibition of title before that date.

It will be seen that there were only three years and not quite two months from the date of the demise in the ejectment until the possession was delivered under the judgment. And as the plaintiffs in this action showed no evidence of title or right of entry, except by the judgment in the ejectment, which proved it only from the date of the demise, it is admitted on their part that the instruction allowing a recovery for rents and waste, for a period anterior to the date of the demise, was erroneous. But it is contended that the error was cured by remitting all of the damages except $2,778 66⅔, which is said to be the amount of three years' rent, and $50 counsel

fee. We do not, however, perceive by what estimate or calculation, founded on the actual verdict, this part of the entire damages can be assumed as being equivalent to three years' rent, as found by the jury, with the addition of $50 as counsel fee, nor how, even if it might be justified by the evidence, it can be shown to be the proper basis of a judgment, for damages found by the jury.

If the jury had found the rents and waste for each year separately for five years before the action was brought, or the possession delivered, and $250, or any other sum for fees in both courts, or either, then it could have been ascertained with certainty what damages were assessed for the three last years, and by adding thereto one-sixth of the assessment for the second year, the damages assessed for rent and waste for three years and two months, intervening between the date of the demise and the delivery of possession, might have been approximated with reasonable certainty ; and by remitting that part of the damages which could not be recovered upon a title evidenced by the judgment alone, the verdict would still furnish a proper basis for a judgment for the residue of the damages found, provided the actual plaintiffs were entitled to recover the entire mesne profits, &c.

Comparing the verdict with the instructions, it must be assumed that the gross sum found in damages covered the rents and waste assessed for five years preceding the delivery of possession under the judgment, and also a sum allowed for counsel fees, as to the amount of which there is no certainty, unless it be assumed to have been $250, proved without contradiction to be reasonable. Then, taking $250 from $4,118, the total damages, and there remains the sum of $3,868, for rents and waste during five years. But how can it be told that the jury estimated these at the same sum for each of the five years? or that they would have estimated an exactly proportionate part of it for the last three years and

MASTERSON
vs.
HAGAN, &c.

2. When a party who has recovered a judgment, seeks to defeat a motion for a new trial, made on the ground of excess of damages and misdirection of the court, by remitting a portion of the damages assessed, such an amount must be remitted as will show to the court that the defendant cannot be prejudiced by refusing the new trial asked for, and that the damages retained are clearly sustained by the proof in the cause, and be a proper basis for the remainder.

two months? And unless this can be assumed with certainty, how can any apportionment of it be regarded as resting upon the verdict of the jury?

But again, if it be assumed that the same sum, that is, one-fifth of $3,868, was assessed for the rents and waste of each of the five years, then the assessment for each year is $773 60, which, for three years and two months, would make $2,449 93—say $2,500, which, with the addition of $50, or even $250, would still fall below the sum remaining after the entry of the remittiter. There was no proof of the actual payment of counsel fees to any amount, nor was there any direct evidence of an agreement to pay any specific sum or sums, or even a reasonable fee or fees. And it is contended on the authority of *Doe, for the Trustees of Augusta, vs. Perkins*, 8 B. Monroe, 198, that without such proof the jury was not authorized to find any damages on account of attorney's or counsel's fees. But as it might be fairly inferred that if the plaintiffs in the ejectment had not paid they were bound to pay reasonable fees to their attorneys and counsel, we cannot decide that such fees ought not to have been allowed in this case. But whether they were in fact allowed, and to what extent in the damages found by the jury, is only a matter of uncertain inference. We have seen, however, that even if allowed to the extent of $250, the judgment stands for more than the verdict proves the plaintiffs to be entitled to, and the excess is of course greater, if no more be allowed for fees than the $50 claimed in the remittiter. And although if the jury had found $2,778 66⅔ in damages, we might not have felt at liberty to say that the verdict was unauthorized by the evidence, or that an excess of $28 66⅔ above our own estimate of what was authorized by the evidence, would, in an action of this kind, be a sufficient ground for setting aside the verdict and granting a new trial; yet, when a plaintiff, having a verdict for flagrantly excessive damages, produced by erroneous instructions in his favor, undertakes to cure

the error by remitting the excess, he is bound to remit so much, that the remainder shall not only be no more than, upon the law and evidence, the jury might justly have found, but shall be certainly no more than the verdict itself proves him to be entitled to by the principles of law, applicable to the case, and in obedience to which the remittiter is made.

Under these views, we are of opinion that the error in the judgment upon the verdict, as actually rendered, was not cured by the remittiter, because it does not satisfactorily appear from the verdict that the damages which the jury had a right to assess, and which they did assess, for the injuries which, in this action, they had a right to consider, were equal to the damages retained and for which the judgment stands; and because, according to any criterion which can be assumed upon and applied to the verdict, the damages are greater than the jury has found the plaintiffs to be entitled to, for injuries remediable by this action. For this, therefore, if there were no other error, the judgment must be reversed.

But the case presents the more radical question as to the right of the actual plaintiffs to recover for the entire mesne profits, waste, and expenses for which the defendant may be properly liable, in an action of this kind, or whether their recovery should, and at the option of the defendant must, be limited to such portion of the entire damage, as corresponds with their interest in the subject which has been injured, and with their right to reimbursement of expenses. There being no proof of actual payment by the plaintiffs, but only a presumed payment or liability of all the lessors, there is no reason for considering the question, as to expenses, separately from that as to the principal injury, of which the expense is an incident. Nor do we mean to intimate that a different principle would be applicable to these questions.

3. Since the adoption of the Code of Practice, no suit in the name of John Doe, the fictitious lessee, can be maintained for the recovery of *mesne profits* after a recovery in ejectment, though the recovery may have been in his name under the former mode of proceeding. The suit must be in the name of the real party interested in the recovery.

Under the former system of practice and procedure, John Doe being the party on the record who recovered the possession by the judgment in ejectment, and apparently the only party injured by withholding it, &c., after the date of the demise, an action for the mesne profits was sustainable in his name ; and damages, covering rents, waste, and expenses might be recovered, ostensibly for his use, but really for the use of the lessors.

But by the 30th section of the Civil Code, the real party in interest must be the plaintiff in every action. And John Doe, known at this day, and for a long time past, as a fictitious plaintiff, the use of whose name was allowed, for facilitating the remedy by ejectment, and attaining more readily the ends of justice, we are of opinion that an action for mesne profits, &c., can no longer be sustained in this fictitious name any more than any other action. And that although the addition of that name to others named as plaintiffs might not, especially if there be no demurrer, be an objection to the action in the name of real parties, it is at best a mere superfluity, and can give no aid to their right of recovery.

Considering this action, then, as one brought by two only out of eight of the lessors, upon whose joint and several demise the land had been recovered, it seems clear that they have been injured to the extent only of their respective interest in the land, and we do not perceive upon what ground they can have a right to recover for an injury to the interests of others, and especially when it is not shown that all had a joint title.

It is said that John Doe may have been a real person, and that the judgment in ejectment shows that the right of possession was in him, and that he has sustained the injuries complained of in the petition. But it is not proved that he was a real person. The confession of the lessee, in the action of ejectment, never proved it, except for the purposes of that action, and of the action for mesne profits founded on

it; and under the Code the fiction for both purposes is done away, and can no longer have effect. And although it is possible that there might be a real Jno. Doe, who had recovered in ejectment, certainly the use of the fiction for ages, authorizes the presumption that the name, in an action of ejectment, and in the action for mesne profits founded on it, is fictitious, and no proof to the contrary is required. The presumption is strengthened by real parties being united as plaintiffs, to recover what would belong to John Doe alone. And even if he be a real person, this union of others with him would show that he had not the entire interest. And in any view of the case, the instruction that the plaintiffs could recover only to the extent of their interests was correct in principle, and should have been given.

Wherefore, the judgment is reversed, and the cause remanded for a new trial, in conformith with the principles of this opinion.